Good morning, Your Honor. May it please the Court. My name is Rodel Rodas, and I'm representing the Respondent, Erlinda Zara. Your Honor, in reviewing the order of the immigration judge in this case, one would see that there was generally a nitpicking as far as whatever inconsistencies the Respondent had. His order begins, for example, by pointing to her saying in her declaration that she was a general party member of a Marcos party during that period. And the judge, the immigration judge, says that in her testimony, she then says that she helped the Secretary in arranging the meetings. So he begins, right? Before we go any further, what are the issues on appeal from your perspective? From my perspective, the issue was that the judge's findings, which go to the credibility issue, were improper, were incorrect, that he abused his discretion. So the only thing you're appealing is the credibility finding? Correct. But the issue also, the judge in his decision said that she left in July of 1992. And then he notes from reviewing the countrywide conditions that the Aquino party, he said, left office or her regime ended in May of 1992. Therefore, he concluded her claim that she would continue to suffer persecution when she left was that there was no basis for it. In fact, what we pointed out, and what is even in his statement, is that her successor was her Secretary of Defense. It was a continuation of her regime where she faced persecution. Let me ask you this. The credibility determination, was that appealed to the BIA? Your Honor, what we appealed were the conclusions he drew. That was what we said. That goes to the heart of the credibility findings because when we said that he erred in making that determination about the Aquino power, the Aquino regime being out of power in July of 1992, when he made that determination in his conclusion, that was finding credibility against the respondent. And we were pointing out that that was an error because, in fact, the Aquino regime continued through the Ramos regime because President Ramos was her Secretary of Defense and was the president she supported. So that, in fact, there was a 12-year period of the continuation of the same policies that she believes was the basis of her persecution. So, in other words, when we pointed to his making certain findings, those findings were the basis of his determining that she lacked credibility. Oh, that's not true. He said that even if we believe the testimony, even if we believe the testimony, it did not constitute past persecution. So those were two, that was an alternative ruling. It did not encompass the adverse credibility determination. Your Honor, he had made up his mind based on what he determined was her lack of credibility. How do you explain his statement that even if we believed it, it's not sufficient to establish past persecution? Your Honor, what he made in his ruling, when he made that comment in the end, it was one where he had established already at that point that he did not find her credible and he did not find the evidence that her testimony was credible. By making that statement at the end, I don't think that that goes to the heart of what his actual decision was. I mean, it was basically finding that because of what he believed to be material inconsistencies in her testimony, that that was the basis of his finding that she did not suffer past persecution. When he made that statement, and I'm not sure what page that was, but you know, the conclusions that he had made, that there was a change of country conditions, was based on his erroneous conclusion that the Aquino regime ended in May of 1992. And therefore when she left in July of 1992, he believes that there was no basis for that because the Aquino party was out of power. And what we were pointing out is that he was wrong factually on that point because the Aquino party continued in power through the Ramos regime presidency from 1992 until 1998. So when the court on page 22 said, the court finds there is competent, credible evidence submitted by the service as to a change of country conditions in the Philippines. That was the basis by their determining that because of that change in the country conditions, because of the change in the presidency. Just to add, Ramos was one of the people who led the revolt against Marcos. In 1986, which led to President Aquino becoming president from 1986 until 1992. And then he succeeded her for another six years. So the period during which she complained about her persecution in her village during the Aquino period continued until even after. And she left after the elections when it was clear that the policies of the Aquino regime were going to be continued because her successor was from her same party. And that was something that the court did not understand and in fact made a big issue about the fact that the Aquino party was out of power in 1992. Therefore, she has no basis to claim that she would continue to suffer persecution. Why don't you, you've got about two minutes left, why don't you reserve it. Can I reserve that for, thank you. Hi, Rena Curtis again on behalf of the government. First of all, I'd like to say that this court has astutely zeroed in on a threshold issue, which is an issue in this case is the petitioner's failure to exhaust her administrative remedies. The petitioner has divested this court of jurisdiction to consider the adverse credibility determination, because she failed to brief this to the Board of Immigration Appeals and she also failed to put this in her. Curtis, I don't know if you ever thought of this, but think about this question under this. This is a streamlining case, right? Yes. Under the streamlining regulation, the IJ's decision becomes the decision of the agency. So if it's clear that the agency considered and decided all these questions, why isn't why aren't the issues exhausted? In other words, the purpose of exhaustion is to give the agency the opportunity to address these issues. And in this case, the agency has finally addressed all these issues. Actually, the reason is because the regulations that are established by the agency are very crystal clear. And just because the board has adopted or affirmed the decision below as being correct in result. It's not just the board. The regulation itself says in that circumstance, the decision of the IJ becomes the decision of the agency. That's what the regulation says. So the agency has spoken. The agency has addressed these issues. Correct. Well, the regulations also say that a party must specifically identify the findings of fact and the conclusions of law or both that are being challenged. And that's at eight CFR one thousand three point three B. And I would also say one thousand three. What is eight CFR? No. Just give me the three. What? Three point one thousand three point three B. Three point three B. OK. Yes, Your Honor. And I would say that, you know, while I guess this is a, you know, a great reach and an argument, you know, saying that just because the board has a regulation that allows them to more quickly review material should not, should not relieve her of her obligation to exhaust her administrative remedies, just as the regulations clearly say that she should. What's the purpose of exhaustion? You know, it really arises from the separation of powers that, well, you have to give the administrative agency the opportunity, and it comes, you know, from SEC versus Schenery, right, that you have to give the agency the opportunity to to review the issue or to decide the issue. And that's all that the that court can review. You know, only the final agency determination. And we can't decide anything that was not decided by the agency. And that's Ventura. And in this case, the agency has addressed, decided and determined every issue. Because one one thousand three point one, he says the decision below is the final agency determination. Right. And the agency. Why doesn't that comply with the with the purpose of exhaustion doctrine? Okay. Because we do not know what the agency would have decided had she specifically argued. And that's inherent in the streamlining regulation. I mean, that's you know, that's the vice of streamlining. But we accept, you know, if we accept the good parts, we have to accept the bad parts. Isn't that the vice of streamlining that we don't know what the agency decided? Well, I think the issue of streamlining is that the agency is reviewing it on the issues. I mean, in all appeals, because we don't know that because all we say, all we get is this, you know, this, this mandatory two line, two line affirmative. So we don't know what the agency looked at. Right. Well, actually, for all we know, you know, you might get this pile here and the IJ says, OK, these are all one liners. I'll put him here. He doesn't have to open the book. We don't even know that, do we? Well, that would be very unfortunate if the Board of Immigration Appeals advocated all of their duties and failed to do that. I mean, these are very specific streamlining regulations which show that, you know, the board member has actually reviewed the case. The board member has taken into consideration everything that has been appealed. It's unreviewable, isn't it? All of that is unreviewable by him. By the court. By this court. Yeah. Can we look at it? Well, you know, I mean, does the board member have to set forth affirmative proof that he actually opened up the brief and read it? Well, she did. You know what I would suggest to you is, in fact, the government would probably we would argue that this court does not have jurisdiction to review a board's decision to streamline a particular case. In fact, I think you've already made that argument in many cases. Anyway, let's get back to the basic question. Why isn't the exhaustion doctrine satisfied under these circumstances? Well, the exhaustion doctrine isn't satisfied in the circumstance because this is a these are jurisdictional and statutory requirements that she must do. And in fact, you know, there's no obligation for the attorney general to even give anyone an appeal. And this is a process that they have set up. And, you know, the regulations are very clear that she must specifically identify what she's challenging. And, you know, basically, if the board it's not drawn to the board's attention, what different error errors she's alleging in the IJS determination. Well, you know, how can they adequately get full? You know, we give full scope to all those rules when the board when we get a decision of the board that actually reviews the IJS decision. And the board sets forth an articulated decision. Then we can you know, then we review that. But what's the purpose of having that if we can't review the BIA decision anyway? In other words, we have to review the IJS decision, right? That's what the regulation says. Correct. So we're reviewing the IJS decision. If you read the IJS decision, all these issues are exhausted. They're addressed by the final agency decision. Well, I think the regulations are very clear. And it's not anyone's obligation to write her brief for her or to pick out the appealable issues for her. Basically, she's responsible for appropriately addressing all of the errors that she's alleging by the IJ. And if her attention does not draw this to the board's attention, then the board hasn't had a chance to review it in the first instance. And basically, you know, this court cannot make these types of determinations in the first instance. This is supposed to be something that's given to the board to review. And we really honestly have no indication how the board would have decided this issue had she brought it to the board's attention. Of course. And then, of course, if we read your brief, you're meaning the agency's brief. The agency did raise all these issues before the BIA. Right. The agency did. No. Yeah. In other words, the the agency's a brief before the board says. Right. You know, we refer you to the decision of the IJ and the IJ got everything right. So isn't that raising all the issues with the board that were before the IJ? No, I think that's the same. That's the same issue is that it's not the government's responsibility to exhaust the petitioner's administrative remedies. But you did it. Well, no, just because you're affirming something doesn't mean that you say that you should adopt it because it's well-reasoned. Doesn't mean that you're preserving each individual error of law that might be in that. Doesn't that incorporate all of the rulings of the IJ? If you say rather than listing the issues on appeal, you just say we think the IJ got all of the issues right. Isn't that incorporating all of the issues the IJ resolved? Absolutely not. In fact, what it's saying is that we are affirming in result. No, no, no. The decision of what the immigration judge said, not that every single thing that the immigration judge said was correct. In fact, let's you know, if you want to get the last sentence, here's the last sentence of the government's brief before the BIA. Right. Yeah. This is page five of the A.R. The IJ decision to deny asylum withholding of removal relief under cat and voluntary departure is amply supported by the record. You know, it addresses all four of those claims. Oh, I don't. I'm sorry. Page five. I wasn't there. Did it say adverse credibility? No. No. But that's inherent. That's inherent. You're saying that I'm preserving. That's inherent. And the government didn't preserve that issue at all. Rota says in the denial of asylum, which is based on lack of credibility. But all these issues were presented to the BIA, right? By the government. I would respectfully disagree with you. All right. We understand your position. Thank you. Thank you very much. Thank you so much. Thank you. Any rebuttal. All right. We will take this case under submission then with the other cases on today's calendar. Last case for argument. So we now stand in adjournment for the day. We thank both counsel for your argument. Thank you. Thank you.
judges: Thompson, Tashima, Rawlinson